### J. W. COOK

v.

**Guy A. THOMPSON, Trustee, San Antonio, Uvalde & Gulf Railroad Company.**

### Civ. A. No. 2076.

United States District Court
W. D. Texas, San Antonio Division.
April 12, 1957.

Calvin W. Wesch, of Roberson & Wesch, Kermit, Tex., for plaintiff.

Josh H. Groce, Eskridge, Groce & Hebdon, San Antonio, Tex., for defendant.

RICE, Chief Judge.

This is a Railway Labor dispute in which a construction of Section 153, First (i) of the Railway Labor Act, Title 45 U.S.C.A. is involved.

In January of 1953, the plaintiff Cook was discharged by the defendant carrier for having failed to protect his assignment for three months without a leave of absence. No action was taken by Cook until December of 1954, at which time Cook filed this suit in the state court and in due time it was removed to this court. Originally Cook prayed for reinstatement and payment for time lost, but the carrier promptly filed its plea to the primary jurisdiction of the court citing in its plea the case of Slocum v. Delaware L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. Thereafter, in May of 1955, at the first hearing in this case, the court indicated that it was felt that under the Slocum case the court had no jurisdiction to order reinstatement and payment for time lost, and the plaintiff thereupon asked, and was granted, leave to amend to eliminate from his pleadings the matter of reinstatement and payment for time lost, which he did.

The carrier likewise filed a plea based upon the plaintiff's failure to exhaust administrative remedies, and, at the time the case was next called in October of 1955, it was brought to the attention of the court that the case of Thompson v. Moore, 5 Cir., 223 F.2d 91, was pending on application for writ of certiorari to the Supreme Court, and that this case would have a bearing upon the defendant's plea of failure of the plaintiff to exhaust administrative remedies. The case was passed at that time to await the outcome of the Thompson-Moore case. On October 24, 1955, the Supreme Court denied certiorari in the Thompson-Moore case, and thereafter in December of 1955 the carrier filed its submission of this controversy with the proper division of the National Railroad Adjustment Board.

Thereafter, plaintiff filed its submission with the Adjustment Board, in which it urged laches on the part of the carrier and want of jurisdiction on the part of the Adjustment Board, claiming that exclusive jurisdiction of this controversy was vested in this court.

Thereupon, the defendant carrier filed in this court its motion for this court to exercise "equitable discretion to give (the National Railroad Adjustment Board) the first opportunity to pass on the issue", namely, the construction of the Railway Labor contracts, rules, customs and usages involved in this suit. Both parties submitted briefs to this court on the question.

It is obvious from the plaintiff's complaint that there is involved in this suit a construction of the collective bargaining agreement between the Railroad and the Union, as well as a construction of the operating rules of the Company and the customs and usages of the Railroad, all of which will have to be construed before a decision in this case can be made.

Under the facts above related, the court is of the opinion that the carrier has acted with comparative diligence in this matter and feels that Cook's plea of laches should therefore be overruled, so that the only question remaining is

whether or not this court has compulsory and exclusive jurisdiction of this controversy.

In the case of Order of Railroad Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 324, 90 L.Ed. 318, the Supreme Court of the United States, in discussing the history of the Railway Labor Act said:

"Congress has specifically provided for a tribunal to interpret contracts such as these in order finally to settle a labor dispute. Section 3 First (i) of the Railway Labor Act provides that disputes between a carrier and its employees 'growing out of * * * the interpretation or application of agreements concerning rates of pay, rules or working conditions * * * may be referred by either party to * * * the Adjustment Board.' The Board can not only order reinstatement of the employees, should they actually be discharged, but it can also under § 3, First (o) and (p) grant a money award subject to judicial review with an allowance for attorney's fees should the award be sustained. Not only has Congress thus designated an agency peculiarly competent to handle the basic question here involved, but as we have indicated in several recent cases in which we had occasion to discuss the history and purpose of the Railway Labor Act, it also intended to leave a minimum responsibility to the courts.

" * * * We have seen that in order to reach a final decision on that question the court first had to interpret the terms of O.R.C.'s collective bargaining agreements. The record shows, however, that interpretation of these contracts involves more than the mere construction of a 'document' in terms of the ordinary meaning of words and their position. See [W. P.] Brown [& Sons] Lumber Co. v. Louisville & N. R. Co., 299 U.S. 393, 396, 57 S.Ct. 265, 266, 81 L.Ed. 301; Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943. For O.R.C.'s agreements with the railroad must be read in the light of others between the railroad and B.R.T. And since all parties seek to support their particular interpretation of these agreements by evidence as to usage, practice and custom that too must be taken into account and properly understood. The factual question is intricate and technical. An agency especially competent and specifically designated to deal with it has been created by Congress. Under these circumstances the court should exercise equitable discretion to give that agency the first opportunity to pass on the issue."

Obviously the language of defendant's motion to stay in this case was copied from the opinion of the Supreme Court in the Pitney case. The defendant's motion asked for this court to "exercise equitable discretion to give that agency (the National Railroad Adjustment Board) the first opportunity to pass on" the proper construction of the Railway Labor contracts, rules, customs, and usages that are involved in this suit.

It is provided in the Railway Labor Act, Title 45 U.S.C.A. § 153 first (i) that after the parties have failed to reach an agreement between themselves, "the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board." Certainly, the carrier was a party which failed to reach an agreement with the plaintiff, and as such the carrier has exercised its right to refer this matter to the appropriate division of the Adjustment Board.

In the case of Order of Railway Conductors of America v. Southern Railroad Co., 339 U.S. 255, 70 S.Ct. 585, 586, 94 L.Ed. 811, which was decided on the same day as the Slocum case, the Supreme Court, after referring to its decision in the Slocum case, said:

"We discuss this case separately because it sharply points up the

conflicts that could arise from state court intervention in railroad-union disputes. After the railroad had sued in the state court, the union filed a petition for hearing and award before the Adjustment Board. The state court nevertheless proceeded to adjudicate the dispute. Sustaining the state court's action would invite races of diligence whenever a carrier or union preferred one forum to the other. And if a carrier or a union could choose a court instead of the Board, the other party would be deprived of the privilege conferred by § 3, First (i) of the Railway Labor Act, 48 Stat. 1191, 45 U.S.C. § 153, First (i) 45 U.S.C.A. § 153, First (i), which provides that after negotiations have failed 'either party' may refer the dispute to the appropriate division of the Adjustment Board."

In the case at bar, it was the employee who brought suit first in the state court and this case was removed to the federal court and thereafter it was the railroad who submitted the controversy to the Adjustment Board, whereas, in the Order of Railway Conductors of America case it was the Union, as representing the employees, who submitted the matter to the Adjustment Board after the Railroad had put the matter in court, so that it is apparent that the Order of Railway Conductors of America case is directly in point.

If the employee in this case could choose a court instead of the Board to pass upon its dispute, the carrier would be deprived of the privilege conferred by the Railway Labor Act, which provides that after negotiations have failed, "either party" may refer the dispute to the appropriate division of the Adjustment Board. Obviously, the statute means just what it says and has been so interpreted in unequivocal language by the Supreme Court of the United States. In the language of the Pitney case, the Railroad having exercised its statutory right of submitting its controversy to the Adjustment Board, this court should exercise its equitable discretion to give that Board the first opportunity to pass upon the proper construction of the Railway Labor contracts, rules, customs and usages that are involved in this suit.

A brief discussion of the authorities cited by the plaintiff employee would seem to be in order.

The case principally relied upon is that of Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. The question that is before this court now, namely, as to whether or not under the Pitney case this court should exercise its equitable discretion to give the National Railroad Adjustment Board the first opportunity to pass upon the proper construction of the Railway Labor contracts, rules, customs and usages, was not involved in the Moore-Illinois Central case, and, as a matter of fact, the Moore case was decided long before the Pitney case was. Furthermore, apparently in the Moore-Illinois Central case, no question of construction of a Railway Labor contract, rules, customs or usages was involved, and neither of the parties had submitted such dispute to the Railroad Adjustment Board. In the Moore-Illinois Central case, the plaintiff had been wrongfully discharged by the railroad because he had brought a suit against it. If the question now before the court was as to whether or not Cook himself had to submit his claim to the Railroad Adjustment Board, the Moore case might be in point, but the question involved in this motion is not that, but is whether or not the Railway Labor Act means what it says when it says that "either party" may submit the matter to the Railroad Adjustment Board.

Plaintiff likewise relies upon the case of Adams v. New York, C. & St. L. R. Co., 7 Cir., 121 F.2d 808, 809. The Adams case involved a "complaint seeking a declaratory judgment defining their seniority rights as railroad employees". The trial court, prior to the decision in the Moore case, sustained the carrier's motion to dismiss on the grounds that exclusive jurisdiction of such controversy vested in the Adjustment Board. The

654

case came on in the Court of Appeals after the decision in the Moore case, and the Court of Appeals apparently misconstrued the Moore case and held that under the Moore case the courts had jurisdiction to determine such a controversy. Subsequently, the Supreme Court held, in the case of Order of Railway Conductors of America v. Southern Railroad Co., supra, directly to the contrary of what the Adams case held.

The case of Newman v. Baltimore & O. R. Co., 3 Cir., 191 F.2d 560, relied upon by the plaintiff, is likewise not in point. There, neither party had undertaken to submit the controversy to the Adjustment Board, and the question before the court was not as to whether or not the court should exercise its equitable discretion, but was whether or not the plaintiff had to submit the controversy to the Adjustment Board.

Plaintiff likewise relies upon Oswald v. Chicago B. & Q. R. Co., 8 Cir., 200 F.2d 549. That case did not involve any question of the court's exercising its equitable discretion to stay. The only question before that court was whether or not plaintiff should be permitted to amend his pleadings to try to bring himself within the decision of the Supreme Court in the Moore-Illinois Central case.

The case of Transcontinental & Western Air v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 907, 97 L.Ed. 1325, likewise did not involve the question of whether or not the court should exercise its equitable discretion so that the carrier could avail itself of the right given to it under the Railway Labor Act to have the Railroad Adjustment Board first pass upon the construction of the Railroad Labor contract, rules, customs and usages. The only question before the court in the Koppal case was as to whether or not an employee must exhaust his administrative remedies before suing in court.

The Slocum case likewise did not involve any question of the court's exercising its equitable discretion, nor did the case of Texas & N. O. R. Co. v. McCombs, 143 Tex. 257, 183 S.W.2d 716, involve any such question.

If this was a hearing on the defendant's plea of failure to exhaust administrative remedies, both the Slocum and the McComb cases might be in point, but that is not the motion that is now before the court, which is only that this court should exercise its equitable discretion to stay this case.

Such is likewise the situation in the case of Thompson v. Moore, 5 Cir., 223 F.2d 91.

The case of Kelly v. Nashville C. & St. L. Ry. Co., D.C., 75 F.Supp. 737, and Award No. 11908, First Division of the Railroad Adjustment Board (Referee Leverette Edwards, involving Engineer Kelly) both were decided upon the same state of facts, and the court there merely held that the plaintiff employee could not file his claim both with the Adjustment Board and at the same time prosecute the same claim in court. No question of equitable discretion to stay was involved therein.

The motion now under consideration being strictly a motion asking this court to "exercise its equitable discretion to give (the National Railroad Adjustment Board) the first opportunity to pass on" the proper construction of the Railway Labor contracts, railroad rules and customs and practices, this is not a hearing on the plea of primary jurisdiction nor a hearing on the defendant's plea of the failure of the plaintiff to exhaust his administrative remedies. The Railway Labor Act, Title 45 U.S.C.A. § 153 First (i) seems clear and since the parties hereto failed to reach an agreement between themselves, "the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board." The Railroad has exercised its statutory right to submit this controversy to the Adjustment Board and in the language of the Pitney case [326 U.S. 561; 66 S.Ct. 325], "under the circumstances the court should exercise equitable discretion to give that agency the first opportunity to pass on the issue." This is the order of this court and the motion to stay is granted.