**J. W. COOK, Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COMPANY, Appellee.**

**No. 17216.**

United States Court of Appeals
Fifth Circuit.

Feb. 27, 1959.

Rehearing Denied April 3, 1959.

Calvin W. Wesch, Richard C. Milstead, Kermit, Tex., for appellant.

Josh H. Groce, San Antonio, Tex., Eskridge, Groce & Hebdon, San Antonio, Tex., of counsel, for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Two things distinguish this case from the run-of-the-mill suit for damages for wrongful discharge of an employee by a railroad both of whom are subject to the Railway Labor Act, 45 U.S.C.A. §§ 151–164 (1926), as amended. First, while the Employee's case was pending in Court, not yet tried or determined, the Railway Adjustment Board entered an Award holding the discharge of Cook rightful. Second, at about the same time as the District Court granted a stay (Cook v. Thompson, 150 F.Supp. 650, April 12, 1957), but prior to the dismissal of the case by the District Court (161 F.Supp. 538, January 2, 1958) on the ground that the intervening Award of the Adjustment Board was final and binding, the Supreme Court in Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., March 25, 1957, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622, described the Railway Labor Act in terms of compulsory arbitration. This contrasted sharply with its earlier language in Moore v. Illinois Central R. R., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, in which this Act was characterized as one for voluntary conciliation.

The combination of the two is enough for the Railroad's advocate to contend with vigor and optimism that what Moore accords—a *right* to treat the discharge as final and sue in a Court for breach of contract [1]—now collides with

---

[1.] We have often and recently spoken of it in terms of a *right*. Majors v. Thompson, 5 Cir., 1956, 235 F.2d 449, 451–452: "* * * Where the employee has voluntarily applied to the Board for reinstatement an election of remedies has been made which bars the *right* to litigate before the courts a claim of damages for wrongful discharge. * * *. This case is one where the plaintiffs had the *right* to elect an administrative remedy for reinstatement or a judicial remedy for damages, but without any *right* to seek both remedies. * * *."

In Thompson v. Moore, 5 Cir., 1955, 223 F.2d 91, 93, we described it as the employees' "option to pursue his judicial remedy without first exhausting his administrative remedy; * * *."

In Woolley v. Eastern Air Lines, 5 Cir., 1957, 250 F.2d 86, 90, we called it the employee's election. "The two Supreme Court decisions [Slocum, Slocum v. Delaware L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 and Moore, supra] * * * make clear the election that is available to the employee. If he determines that he will treat his grievance as involving a determination of rights as an employee under the bargaining agreement and asserts his rights to be retained as an employee he must go to the board for redress. If he accepts the action of the carrier as a final discharge he may sue in court for a breach of the contract of employment. He may not do both."

the *right* of the Railroad to take the dispute to the Adjustment Board whose decision is final and binding. Without attempting to formulate a rule of choice in this impossible impasse, the Railroad is content to accept the position that the outcome depends, or may, on which agency—Court or Board—first decides the case.

The unsatisfactory nature of any such rule is perfectly evident. What are "rights" or thought to be "rights" turn out to be something less, and all depending primarily on chance, not reason. It *is* chance that the state of the docket in a particular court is such that the Adjustment Board's Award comes down before the court case is tried, even though the Judge has previously denied the railroad's formal motion to stay pending the administrative decision.[2] It is chance that the particular Judge grants a stay, where others might not, on the sole ground that the Board should first have the opportunity to determine the issue. This is more than a stay. It is virtually abdication for when done it assures that there will never be anything to try since the Award, for or against Railroad or employee, will be binding.[3] And to chance as a poor determinant must be added the even more unsatisfactory prospect—that of a conscious race *against* time for the first decision. That opens up any adjudicatory system— whether Court or administrative—to urgent and persistent importunities on the one hand, resistence and opposition on the other, together with the likelihood of abuses which such pressures invite

or generate, wholly without regard to the obvious inability of either to know or predict the outcome and with each having hope only that the probability of success is greater in the one forum rather than the other.

We do not believe that Congress meant to prescribe any such unpredictable procedure or that the Supreme Court has intended that its interpretations should bring it about.

That we are faced with this in this case springs, we think, from a basic misconception by the District Court. Its opinion, Cook v. Thompson, 150 F.Supp. 650, incorporated as a part of the agreed statement of the case for appeal, F.R. Civ.P. 76, 28 U.S.C.A., shows that the stay was based on Order of Railway Conductors v. Pitney, 1946, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318. So much so was it that the Court remarked, "Obviously the language of defendant's [Railroad's] motion to stay in this case was copied from the opinion of the Supreme Court in the Pitney case," 150 F.Supp. 650 at page 652.

The District Court apparently thought that the Supreme Court's reference to the exercise of equitable discretion would apply to a suit for damages for wrongful discharge. Of course, Pitney did not involve any such claim. That was the case of a Federal Bankruptcy Court having supervision over the estate of a bankrupt. A dispute arose between the management of the Railroad (that is the receiver, trustee or debtor in possession) and the Brotherhood as to alloca-

2. That is what took place in Sjaastad v. Great Northern Ry., D.C.N.D.1957, 155 F.Supp. 307, Id., D.C.1958, 158 F.Supp. 760.

3. That is what happened in this case. Suit was filed December 1954. By amendment the plea for reinstatement was eliminated leaving only the suit for damages for breach of contract for wrongful discharge. In October 1955 the Court passed the case pending action by the Supreme Court on application for certiorari in Thompson v. Moore, 5 Cir., 1955, 223 F.2d 91. Certiorari was denied October 24, 1955, 350 U.S. 873,

100 L.Ed. 771. Subsequently, in December 1955 the Railroad filed its initial submission of this controversy with the National Railroad Adjustment Board. Thereafter the Railroad filed its motion for a stay. This was granted for the reasons pointed out in the Court's main opinion. Cook v. Thompson, Trustee, D.C.W.D. Tex.1957, 150 F.Supp. 650. Subsequently, January 17, 1957, the Adjustment Board rendered an Award holding the discharge proper. Thereafter the District Court, solely on the basis of the Award, dismissed the case with prejudice, 161 F.Supp. 538.

tion of certain work under the collective bargaining contract. But this had to do with the continuing relations between the Railroad and its current employees.

That Pitney was not intended in any way to restrict or limit or modify Moore is shown by Slocum v. Delaware L. & W. R. R., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. That opinion took cognizance of both Pitney and Moore. As to Pitney it expanded what the Court had described as equitable *discretion* to defer action pending administrative determination into one of *power*, i. e., jurisdiction. Its precise holding was that a dispute between two rival brotherhoods concerning existing employees was for the exclusive determination of the Adjustment Board, and beyond the capacity of State Courts to interfere. Concerning Pitney it said, "This reasoning equally supports a denial of power in any court—state as well as federal—to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act." 339 U.S. at page 244, 70 S.Ct. at page 580, 94 L.Ed. at page 800. As to Moore it was even more pointed.

"Our holding here is not inconsistent with our holding in Moore v. Illinois Cent. R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board.

"We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive. The holding of the Moore case does not conflict with this decision, and no contrary inference should be drawn from any language in the Moore opinion. * * *." 339 U.S. at pages 244–245, 70 S.Ct. at page 580, 94 L.Ed. at page 800.

The result was that the Supreme Court intended that Moore and Slocum should coexist. Moore itself rejects the subsidiary argument here advanced by the Railroad that, dealing with a 1926 Act case, the 1934 Amendments applicable here compel another result. Any doubt on that score was, of course, obliterated by the implicit approval of Moore twelve years later in Transcontinental and Western Air, Inc. v. Koppal, 1953, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325.

If Moore has lost this vitality, or if its strength has been sapped, it is from occurrences subsequent to Koppal, and for us, since the last of our many decisions on this subject, see note 1, *supra.* The event here deemed decisive by the Railroad was the decision in Brotherhood of Railroad Trainmen v. Chicago R. & I. R. R., 1957, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622.

Without a doubt this opinion speaks in unmistakable terms and its action is far-reaching in compelling *both* parties upon the application of *one of them*, to proceed to a determination of the "minor" disputes before the Board. Louisville & N. R. R. Co. v. Brown, 5 Cir., 1958, 252 F.2d 149. The "* * * provisions [of the Act] dealing with the Adjustment Board were to be considered as compulsory arbitration in this limited field. Our reading of the Act is therefore confirmed, not rebutted, by the legislative history." Brotherhood of Rail-

road Trainmen v. Chicago R. & I. R. R., supra, 353 U.S. at page 39, 77 S.Ct. at page 640, 1 L.Ed.2d 628. "The National Board was given jurisdiction over 'minor disputes,' meaning those involving the interpretation of collective-bargaining agreements in a particular set of facts. Either party to such a dispute could bring the other before the Board in what was, in fact, compulsory arbitration. * * *." State of California v. Taylor, 1957, 353 U.S. 553, 558–559, 77 S.Ct. 1037, 1040, 1 L.Ed.2d 1034, 1038.

To be sure this stands now in sharp contrast to what was said in Moore. "For neither the original 1926 Act, nor the Act as amended in 1934, indicates that the machinery provided for settling disputes was based on a philosophy of legal compulsion. On the contrary, the legislative history of the Railway Labor Act shows a consistent purpose on the part of Congress to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature." 312 U.S. at pages 635–636, 61 S.Ct. at page 756, 85 L.Ed. at page 1093.

But in its recent characterizations of the Act as one of compulsory arbitration requiring that it " * * * be literally applied in the absence of a clear showing of a contrary or qualified intention of Congress," Brotherhood of R. R. Trainmen v. Chicago R. & I. R. R., 353 U.S. 30, at page 35, 77 S.Ct. at page 637, 1 L.Ed.2d at page 626, we do not think that the Court meant to clear the tracks of Moore and the great body of law it set in train.

This decision, portentous as it is, still respects the line which Moore and Slocum drew: has the employee accepted as final the termination of the relationship of employer-employee? Or is the employee seeking to continue his status as an employee? If it is the former, the remedy of damages in a court of law is the right of the employee. Industrial peace [4] and the uninterrupted operation of the railroad system will not be imperiled by the determination of that isolated dispute in a court proceeding. The "right" of the railway to compel resort to the Adjustment Board concerns only a dispute between it and one then having or claiming to have the status, or right to the status, of an employee. Where that status has been finally terminated and no effort is being made to revive or reinstate it, the employee has the absolute right, subject only to State procedural requirements, Transcontinental & Western Air, Inc. v. Koppal, supra, to treat the relationship wholly at an end and sue as for any other breach of contract.

 He may, of course, waive that right by proceeding voluntarily on the administrative route. That election binds him. Majors v. Thompson, supra. But the employee, and the employee alone, can make that election. Once the employee has properly set the judicial claim in motion, nothing which the railroad thereafter does, nor action which the Adjustment Board takes, can detract from the employee's right to pursue to the end a judicial determination of his breach of contract suit.

The Court has the constitutional duty to hear and determine this cause. The Award of the Adjustment Board was not binding or final on Cook. The Court could dismiss the cause only after a determination. To secure this determination a judicial trial must be had.

Reversed and remanded.

4. Of course the claim by the brotherhood that a previous discharge of an employee was wrongful may itself be a Slocum dispute for the exclusive determination of the Adjustment Board insofar as it affects the continuing relationship between the railroad and its current employees. This was one of the twenty-one grievances involved in Brotherhood of Railroad Trainmen v. Chicago R. & I. R. Co., 353 U.S. 31, 77 S.Ct. 635, 1 L.Ed.2d 622.