John FERRO, Harry Lauda and Jerome J. Gagliano, on behalf of themselves, and all those similarly situated, Plaintiffs,

v.

RAILWAY EXPRESS AGENCY, INC. and George M. Harrison, individually and as Grand President, and George M. Gibbons, individually and as Grand Secretary-Treasurer of The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, and Daniel J. Sullivan, individually and as General Chairman, and Robert Devlin, individually and as General Secretary-Treasurer of the New York District Board of Adjustment of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, and Express and Station Employes, Defendants.

United States District Court
S. D. New York.
April 5, 1960.

Harold, Luca, Persky & Mozer, New York City, for plaintiffs.

James V. Lione, New York City, for defendant Railway Express Agency, Inc.

Reilly, Curry & Gibbons, New York City, and Mulholland, Robie & Hickey, Washington, D. C., for defendants Daniel J. Sullivan, Robert Devlin and Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees.

PALMIERI, District Judge.

Plaintiffs, members of Lodge 2053 of the defendant, Brotherhood of Railway and Steamship Clerks, and former employees of the defendant Railway Express Agency, Inc., have brought this action alleging that they were wrongfully laid off as a result of a contract violation on the part of both defendants and "hostile discrimination" on the part of the Brotherhood. Plaintiffs request relief in the form of an order directing their reinstatement with back pay and requiring the Brotherhood to process their grievance. In the alternative, plaintiffs request damages for wrongful discharge. Defendants seek dismissal of the complaint on the ground that the court is not competent to proceed since the applicable provision of the Railway Labor Act, 44 Stat. 576 (1926), as

amended, 45 U.S.C.A. § 153,[1] requires plaintiffs to seek relief in an administrative proceeding before the National Railroad Adjustment Board. In the event that direct recourse to the court is permitted, defendants request summary judgment on the merits.

## I—The Dispute

The complaint alleges that plaintiffs were formerly employed at the Communipaw Terminal of Railway Express in Jersey City, New Jersey and that on April 16, 1958, the defendants entered into a "Special Agreement"[2] relating to the transfer of work and positions from the Communipaw Terminal to other terminals operated by Railway Express. The "Special Agreement," in restricting the number of men to be transferred and thereby precluding plaintiffs from obtaining employment, is alleged to violate Rule 22 of the collective bargaining agreement between Railway Express and the Brotherhood[3] and Resolution 213 of the Conventions of the Brotherhood.[4] Plaintiffs further allege that defendants' conduct constituted a violation of the Railway Labor Act because, pursuant to the "Special Agreement," processing of grievances was prohibited[5] and discrim-

1. 45 U.S.C.A. § 153, First (i) provides:
    "The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

2. The "Special Agreement" reads in part:
    "1. This Agreement is made to deal with a particular situation caused by the abandonment of train service handling express by the Baltimore and Ohio Railroad at the Communipaw Express Terminal, Jersey City, New Jersey, which necessitates a rerouting of express traffic to other rail carriers serving the New York area.
    "2. It is agreed that effective April 28, 1958, 65 positions will be established at the Pennsylvania Express Terminal and will be filled by employes on the seniority roster at the Communipaw Express Terminal. The positions will be filled by canvass, in seniority order, of employes on the Communipaw seniority roster. Employes who are assigned to the positions at Pennsylvania Express Terminal under this paragraph 2 will acquire seniority on the Pennsylvania

Express Terminal roster with their same seniority dates as shown on the Communipaw roster and will relinquish their seniority rights at Communipaw and their names will be removed from the Communipaw roster."

3. Rule 22 reads in part:
    "Transferring—Rule 22. Positions or work involving a position may be transferred from one seniority district to another after conference and agreement between the management and the duly accredited representatives of the employes. Employes may follow their positions or work when same is transferred from one seniority district to another. The incumbents will have prior rights to the positions to be transferred, if they elect to accompany same."

4. Resolution 213 reads in part:
    "[I]n all future transfers, consolidations, coordinations, abandonments or dissolutions of existing facilities involving members and employes represented by our organization, which results in displacement of employes or rearrangement of forces, such members and employes shall have the right to follow their positions or work with their established seniority rights. * * *"
    See Grand Lodge of the Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express and Station Employees v. Girard Lodge, 1956, 384 Pa. 248, 120 A.2d 523, 527 (resolution is expression of policy but not a governing law of Brotherhood).

5. Paragraph 5 of the "Special Agreement" reads:
    "5. It is further agreed that this Agreement is made to cover a particu-

ination was practiced against plaintiffs in favor of employees at other terminals.

When the Baltimore and Ohio Railroad discontinued passenger service into the Communipaw Terminal in the spring of 1958, Railway Express substantially terminated its operations at Communipaw and rerouted traffic into its Pennsylvania Terminal. Railway Express advised the Brotherhood that Rule 22 could not be invoked to provide jobs at other terminals for Communipaw men. Railway Express took the position that the jobs which the Communipaw men had been employed to perform ceased to exist with the abandonment of service by the Baltimore and Ohio Railroad, leaving no express work or positions to be transferred. A committee of the District Board of Adjustment of the Brotherhood asked Railway Express to alleviate the situation by filling additional jobs that might be available at the Pennsylvania Terminal from the Communipaw roster. As a result of this proposal, the "Special Agreement" was executed pursuant to which 65 Communipaw employees were given positions at the Pennsylvania Terminal.

It is plaintiffs' contention that the seniority rosters at the Pennsylvania and Communipaw Terminals should have been combined and that if such a combination had been effected, plaintiffs and other Communipaw employees would have displaced those employees at the Pennsylvania Terminal, members of Lodge 2147, whose seniority would have been lower on a combined list. Defendants maintain that Railway Express was under no contractual obligation to transfer any of the Communipaw men and that therefore, the "Special Agreement" took no rights away from plaintiffs.

## II—Jurisdiction of the National Railroad Adjustment Board

■ Absent the charge of "hostile discrimination" on the part of the Brotherhood, plaintiffs concede that the National Railroad Adjustment Board would be competent to resolve this dispute. See Pennsylvania R. Co. v. Day, 1959, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422; Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L. Ed. 795; cf. Felter v. Southern Pacific Co., 1959, 359 U.S. 326, 327 note 3, 79 S.Ct. 847, 3 L.Ed.2d 854. Concurring in the position taken by Railway Express that Rule 22 was not applicable to the Communipaw situation, the Brotherhood agreed not to file any grievance or claim on behalf of Communipaw employees who lost their jobs.[6] It is not disputed, however, that despite the Brotherhood's refusal to urge plaintiffs' theory of the scope and application of Rule 22, plaintiffs have standing to present their contentions to the Board. See Elgin, J. & E. R. Co. v. Burley, 1945, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, adhered to on rehearing, 1946, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928. Plaintiffs' argument that the National Railroad Adjustment Board is not disinterested and would therefore deprive them of procedural due process is speculative in nature and, at this stage of the controversy, inadequate to frustrate the congressional purpose to place primary jurisdiction in the administrative tribunal. E. g., United Railroad Operating Crafts v. Pennsylvania R. Co., 7 Cir., 1954, 212 F.2d 938, 942; United Railroad Operating Crafts v. Wyer, D.C.S.D.N.Y., 115 F. Supp. 359, 365, affirmed, 2 Cir., 1953, 205 F.2d 153, certiorari denied, 1954, 347 U.S. 929, 74 S.Ct. 529, 98 L.Ed. 1081; cf. Edwards v. Capital Airlines, Inc., 84 U.S.App.D.C. 346, 176 F.2d 755, certio-

lar situation and it is not a precedent for any other situation, whether the facts of any other situation are identical or not, and this Agreement will not be cited or referred to by either party as a reason for entering into any other agreement, regardless of

any particular fact situation which may arise and that no grievances or claims arising from the application of this Agreement will be filed or progressed [sic]."

6. See note 5, supra.

rari denied, 1949, 338 U.S. 885, 70 S.Ct. 186, 94 L.Ed. 543 (review on merits granted where court found system board biased).

### III—The Claims Asserted By Plaintiffs

In support of their contention that they are not required to seek an administrative remedy, plaintiffs explain that their complaint is designed to state two basic claims, both of which are appropriate for adjudication by the court. The first claim is said to present a "federal question" arising under the Railway Labor Act. See 28 U.S.C. § 1337 (1958) (federal courts have jurisdiction of civil actions arising under any law regulating commerce). According to plaintiffs, the essence of their "federal question" claim lies in the charge that the Brotherhood discriminated against some 82 members of Lodge 2053 by refusing to demand that Railway Express transfer these employees to other terminals when operations at Communipaw were terminated. This assertion, that the Brotherhood failed to represent the entire membership in good faith in entering into the "Special Agreement," is said to bring the dispute within the doctrine enunciated in Cunningham v. Erie R. Co., 2 Cir., 1959, 266 F.2d 411 and in other cases dealing with a union's statutory duty to represent all employees fairly and equally. See Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80; Brotherhood of Railroad Trainmen v. Howard, 1952, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; Steele v. Louisville & Nashville R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Mount v. Grand International Brotherhood of Locomotive Engineers, 6 Cir., 1955, 226 F.2d 604. The second claim is said to present a state cause of action for wrongful lay-off in violation of contract, a claim which is validly before the court since diversity of citizenship is admittedly present.

7. See note 1, supra.

8. An employee whose primary claim is against his union for breach of its duty of fair representation may join his em-

### A. The Discrimination Claim

■■■ With regard to the claim alleged under the Railway Labor Act, the court has been instructed that the simple question to be resolved is this: "does the dispute grow 'out of grievances or out of the interpretation or application of' the [collective bargaining agreement] or is it a question of statutory interpretation?" Latham v. Baltimore & O. R. Co., 2 Cir., 1960, 274 F.2d 507, 511; Cunningham v. Erie R. Co., supra at page 416 of 266 F.2d. If the question is one of statutory interpretation, the court is free to decide the controversy; if the interpretation or application of the collective bargaining agreement is basic to the dispute, primary jurisdiction rests in the National Railroad Adjustment Board.[7]

To establish their principal charge against Railway Express, it is evident that plaintiffs seek an interpretation of the scope and application of a provision of the collective bargaining agreement. See Gainey v. Brotherhood of Railway and Steamship Clerks, D.C.E.D.Pa.1959, 177 F.Supp. 421, 429, affirmed, 3 Cir., 1960, 275 F.2d 342. Indeed, plaintiffs urge that it was incumbent upon the Brotherhood to challenge the Railway Express interpretation of Rule 22. By failing to do so and instead, concurring in the violation of Rule 22, the Brotherhood is said to have violated its statutory duty of good faith representation.

However, plaintiffs maintain that regardless of the nature of their direct charge against Railway Express,[8] the charge against the Brotherhood does not stem primarily from a dispute as to interpretation or application of the collective bargaining agreement. In their brief, plaintiffs state their position as follows:

"Assuming arguendo that Rule 22 were interpreted to permit the Special Agreement (and plaintiffs deny

ployer as a party if he seeks reinstatement. Cunningham v. Erie R. Co., 2 Cir., 1959, 266 F.2d 411, 416.

that it can be so interpreted) if the fact is that practice and precedent are such that the Brotherhood has consistently acted in a manner consistent with plaintiffs' view of Rule 22, then the sudden deviation without reason from such consistent practice is a discriminatory act, actionable under the Railway Labor Act."

Thus, in effect, plaintiffs are asserting this proposition: if the "Special Agreement" is not found to be in violation of the collective bargaining agreement, discrimination would still be present because the Brotherhood, "without reason," failed to insist upon an erroneous application of the contract. Before labelling the Brotherhood's action as unreasonable, plaintiffs might consider that had the Brotherhood challenged the Railway Express interpretation of Rule 22 before the Board, but without success, the 65 top seniority Communipaw employees who were transferred pursuant to the "Special Agreement" may well have shared plaintiffs' misfortune.

Under the circumstances presented here, I do not believe that the ruling in Cunningham v. Erie R. Co., supra, or the liberal use of the word "discrimination" in the complaint helps plaintiffs to establish their contention that a claim under the Railway Labor Act is properly before the court. In sum, I conclude that the dispute primarily involves a question as to the interpretation or application of the collective bargaining agreement and that if plaintiffs seek reinstatement and back pay they must pursue their remedies before the Board.

B. The Claim for Wrongful Discharge

■ As to the state cause of action for wrongful discharge, plaintiffs correctly refer to the applicable rule that such a claim may be brought in either a state court, or in a federal court if there is diversity. See Cunningham v. Erie R. Co., supra at 415 of 266 F.2d. However, if plaintiffs choose this route they must show that their employee status is terminated and that they are making no attempt to revive or reinstate that status. See Moore v. Illinois Cent. R. Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Cook v. Missouri Pacific R. Co., 5 Cir., 263 F.2d 954, 958, certiorari denied, 1959, 361 U.S. 866, 80 S.Ct. 120, 4 L.Ed.2d 104; Wagner v. International Brotherhood of Electricians, 395 Pa. 380, 150 A.2d 530, certiorari denied, 1959, 361 U.S. 33, 80 S.Ct. 123, 4 L.Ed.2d 99. It is not clear from the complaint whether the plaintiffs wish to treat their lay-off as the final and irreversible termination of their employment by Railway Express. If plaintiffs are willing to forego their demands for reinstatement and back pay and limit their prayer for relief accordingly, their diversity claim will be properly presented for adjudication by the court.

## IV—Conclusions

1. To the extent that the complaint purports to allege a federal question under the Railway Labor Act, the defendants' motions to dismiss are granted. See Rules 12(c), 56(c), (d), Fed.R.Civ. P., 28 U.S.C.[9]

2. The plaintiffs may pursue their state cause of action for wrongful discharge provided that within thirty days of the filing of the order to be entered herein plaintiffs amend their complaint so as to limit their allegations and requests for relief to this remaining claim. See Rule 56(c), (d), Fed.R.Civ.P.

Settle order on notice.

---

9. Although the defendant, Railway Express Agency, Inc., moved for judgment on the pleadings pursuant to Rule 12 (c), Fed.R.Civ.P., and the defendant, Brotherhood of Railway and Steamship Clerks, moved to dismiss the complaint pursuant to Rule 12(b) (1), Fed.R.Civ. P., the affidavits introduced by the parties require the motions to be treated as requests for summary judgment. Rule 56, Fed.R.Civ.P.