**J. H. HODGES and Brotherhood of Railroad Trainmen, Appellants,**

v.

**ATLANTIC COAST LINE RAILROAD COMPANY, Appellee.**

No. 19496.

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1962.

Sam D. Hewlett, Jr., Atlanta, Ga., Wayland K. Sullivan, Cleveland, Ohio, for appellants.

Bernard J. Mayer, LaGrange, Ga., Walter D. Sanders, Newnan, Ga., for appellee, Gerald L. Burrows, Jacksonville, Fla., Lovejoy & Mayer, LaGrange, Ga., of counsel.

Before TUTTLE, Chief Judge, BROWN, Circuit Judge, and JOHNSON, District Judge.

JOHN R. BROWN, Circuit Judge.

This appeal presents the problem of the enforceability of an award of the Railway Adjustment Board. The District Court never got to the intrinsic correctness of the award. The Court, sustaining a motion to dismiss the complaint which incorporated the award as an annexed exhibit, held that the award was in the alternative and was therefore too vague to be final and enforceable. We disagree in the main and reverse. In analyzing the matter against the successful motion to dismiss, we have had nothing but the complaint and the annexed award. We emphasize this at the outset so that when and as hearings are later held to enforce the ultimate award, nothing said, or unsaid, by us here will be interpreted as a declaration as to what the facts are or the nature of the relief, if any, to which the Employee is entitled.

█ The controversy is the familiar case for reinstatement of the Employee to his former position as trainman for the Carrier. Of course, as a part of the relief sought, the Employee claims back wages. But the gist of the grievance is that he was wrongfully deprived of his seniority and employment rights in April 1957. He expressly chooses not to accept this. On the contrary he expressly seeks reinstatement. This presupposes the continuation of the status of employment. Hence, the claim was the classic one for exclusive primary jurisdiction of the Railway Adjustment Board. Penn-sylvania R. R. v. Day, 1959, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422; Slocum v. Delaware, L. & W. R. R., 1950, 339 U. S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Ry. Conductors v. Southern Ry., 1950, 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811. It was not a Moore-type suit seeking merely a money judgment for damages for wrongful discharge on the assumption that the status of employment no longer existed. Moore v. Illinois Central R. R., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089; Cook v. Missouri Pacific R. R., 5 Cir., 1959, 263 F.2d 954; cf. Union Pacific R. R. v. Price, 1959, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460.

The grievance grows out of the fact that in late 1956 the Employee obtained a judgment against the Carrier for approximately $22,000 on an FELA claim for injury to his left foot which, by allegation and medical testimony in that suit, was described variously as a substantial, if not total, permanent disability. The carrier, accepting the verdict and judgment which it paid, presumably thought that it could then take the Employee at his own word especially since this was fortified at least to the extent of some $22,000 by the jury in that damage suit. Consequently, on April 29, 1957, the Carrier without further notice, the service of any charges or any investigation or hearings thereon as required by the collective bargaining contract,[1] relieved the Employee of his rule book and switch key and removed him from the seniority roster. There is quibbling over whether this was a "discharge." But that does not matter. We accept it as true that this action effectively denied the Employee of his former work and pay.

In the administrative handling of the controversy through the hierarchal steps of the grievance machinery, the Employee relied on, and strongly pressed, a medical report which stated that he "should be employable at any work he wants to do, the foot at the present time is not disabling to him in any way."

---

1. Article 31 of the contract provided in part:

"(a) A trainman will not be discharged without an investigation."

Likewise undisputed at this time is the assertion that the Employee applied to the Carrier for a physical examination by a company physician. The Union representative requested the Carrier to set up a Board of three doctors to determine the Employee's physical condition. The Carrier denied all of these requests. This was, of course, consistent with the position vigorously taken by it in the proceedings before the Adjustment Board. It was the simple, but forthright, contention that while an employee must be free to pursue FELA rights without subsequent recriminatory reprisals, the "carrier is under no compulsion to retain him in the service" when the employee alleges and successfully maintains in such suit that he was permanently disabled. This was restated in terms comparable to res judicata or collateral estoppel.[2]

The precise point determined by the Adjustment Board was that when the Carrier removed the Employee summarily from the seniority roster without notice, hearing or determination of his contemporary physical capacity, it violated the contract prohibiting a discharge without an investigation (see note 1, supra). The Board's decision pointed out that had the Carrier followed the prescribed investigation route, there would have been a determination—one way or the other—on the implied charge of physical incapacity. This, the Board stated, would have presented quite a different case for adjudication by it. As it was, so the Board held, the Carrier had discharged the Employee without complying with the contract.

The Carrier does not seem to deny that upon such a conclusion, the Board could order reinstatement. But the Adjustment Board did not do this. Rather, it apparently approached the case as though the intrinsic merits of the discharge were before it so that the question of actual physical fitness as of October 21, 1957,[3] was pertinent. Consequently, it entered a conditional award requiring reinstatement with back pay if—and the if was significant—the Employee was "able to return to work" on that date. The order then prescribed the steps to which the Carrier here, and below, urged such vigorous opposition. To determine physical capacity, the Board, in effect, ordered a medical compulsory arbitration.[4]

The complaint filed by the Employee in the District Court seeks enforcement of this award including, specifically, the issuance of the necessary mandatory orders requiring the Carrier to take the steps required of it in carrying out the

---

2. The award quoted this contention of the Carrier:
  "Once an employee has obtained judgment from his employer in the Courts by offering sworn testimony to support his initial position, it is not feasible that he should again be permitted to appear before another tribunal with statement which contradicts his original position for the purpose of establishing against his employer a second claim. The employer is thereby subjected to double jeopardy."

3. This date is presumably fixed as of the time the Employee made formal demand for reinstatement.

4. The Adjustment Board's order states:
  "Having found that claimant was wrongfully withheld from service in violation of specific provisions of the agreement between the carrier and the union, we further find that claimant is entitled to an examination by the carrier's examining physician to determine whether

he is physically able to return to work; that if said physician finds he is unable to return to work claimant may, if he chooses, engage his own physician, and if the latter finds he is able to work, he (claimant's physician) and the carrier's physician shall agree upon a third physician to examine claimant, and the decision of a majority of said physicians as to claimant's ability to return to work shall be binding on the parties hereto. We further find that said physician or physicians shall, if he or they can, determine whether claimant was able to return to work on October 21, 1957, and if he or they find he was able to return to work on said date, he shall receive such earnings as he would have received had he been allowed to return to work on said date."

  The formal award terminates with the following:

  "Award: Sustained as per findings hereinabove."

medical examination and reports. The complaint makes clear, and it is not disputed, that the Carrier refused to comply with the award. Indeed, it filed a motion to dismiss for lack of jurisdiction "in that the purported award is not an award as required by the "Railway Labor Act" since it is not final because it "is in the alternative. It neither sustains nor denies the claim alleged by the * * *" Employee. The District Judge in a memorandum order held that the purported award "is in the alternative. It neither denies nor sustains the claim alleged by the plaintiff." Therefore, he concluded, there is a lack of jurisdiction since there "is not an award as required by the Railway Labor Act * * *," and "the conditions precedent to jurisdiction do not exist." On this the Court ordered that the Carrier's "motion to dismiss is sustained, and the case will be dismissed without prejudice to the plaintiff to take further action to have an appropriate award rendered by the * * Adjustment Board."

■ At the outset we think it is not appropriate to speak of this in terms of jurisdiction. The statute specifically charges the District Court with the duty to hear and determine suits to compel compliance with an award of the Adjustment Board.[5] That contemplates, of course, that the Court will compel enforcement only if such awards are in accordance with controlling law. If a purported award does not meet these standards, either because of its intrinsic holdings, or because of an impermissible conditional alternative form in which it is cast, the Court may not, and should

not, order compliance with it. But this is because the award is not legally acceptable, not because the Court lacks power.

■ Of course it must be an "award" and not a mere interim order made in the course of a hearing having no dispositive effect. But this is to be determined in the light of practical considerations. Indeed, the statute, unlike so many outlining quasi-judicial administrative proceedings, does not speak in terms of a "final award." The reference is to "an order of * * * the Adjustment Board." 45 U.S.C.A. § 153 First (p). The statute does, it is true, prescribe that such an order "shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award." 45 U.S.C.A. § 153 First (m). But this is far from saying that to warrant the sanction of a court order, the so-called award of the Adjustment Board must meet all of the rigorous demands of finality as that term is understood in traditional litigation. As later pointed out, this case illustrates why, under a statute enacted to achieve industrial peace in the railroad industry, that congressional aim is thwarted by any such rigid standards.

■ Under such circumstances we think that this matter—even though cast in terms of jurisdiction or quasi jurisdiction—should be treated as analogous to the problem of determining "finality" for the purposes of certain appellate review. There are instances, undoubtedly rare, in which determination of collateral issues, separable from the main claim, has such operative effect that unless ap-

5. 45 U.S.C.A. § 153 First (p): "If a carrier does not comply with an order of * * * the Adjustment Board * * * the petitioner, * * * may file in the District Court of the United States for the district in which he resides * * * a petition setting forth briefly the causes for which he claims relief, and the order of the * * * Adjustment Board * * *. Such suit * * * shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of

* * * the Adjustment Board shall be prima facie evidence of the facts therein stated * * *. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as * * * costs of the suit. The district courts are empowered * * * to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of * * * the Adjustment Board."

peal (or here judicial enforcement) is then allowed, the right of review or enforcement will be lost altogether. Relying on Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528; Swift & Co. Packers v. Compania Colombiana Del Caribe, 1950, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206; Sears, Roebuck & Co. v. Mackey, 1956, 351 U.S. 427, 441, 76 S.Ct. 895, 100 L.Ed. 1297 (concurring opinion), we recently gave effective recognition to these principles in United States v. Wood, 5 Cir., 1961, 295 F.2d 772, 777. Though that appeal was from the denial of a temporary restraining order, not otherwise appealable under 28 U.S.C.A. §§ 1291, 1292(a), we allowed it since under the circumstances of that case it was a determination of "substantial rights of the parties which will be irreparably lost * * *." 295 F.2d 772, 778.

The record is so far undisputed as to several things which bear directly upon this. First, the Board considers that determination of physical fitness is essential to a final disposition of this grievance. Without prejudging the issue, this seems reasonable—certainly at this stage—if for no other reason than the great public interest in having trains run by workers sound of limb and mind. Second, the Adjustment Board concludes that in this determination medical experts afford the best means of determining the truth. But third, and decisive, the Carrier categorically refuses to participate in any such procedure. There is, thus a complete stalemate. The Adjustment Board orders one procedure. The Carrier rejects it. Under the statutory scheme the Board has no sanctions of its own. It has no means save the enforcement proceedings under § 153 First (p) to compel compliance.

Thus we think that there was an award of sufficient definiteness to invoke the aid of the District Court in its enforcement. The Court was therefore in error in having dismissed it outright. And to this extent we reject the cases urged by the Carrier and accepted as authoritative by the District Court. Smith v. Louisville & Nashville R. R., D.C.Ala., 1953, 112 F.Supp. 388; Gunther v. San Diego & Arizona Eastern Ry., S.D.Calif., 1958, 161 F.Supp. 295; 1961, 192 F.Supp. 882; 1961, 198 F.Supp. 402. The Court on remand should therefore enter appropriate orders to effectuate the medical examinations and reports for use by the Adjustment Board.

■■ But in so holding we do not think that the award was in such shape that the District Court could proceed to the hearing and ultimate determination of enforceability on the merits. Again, without indicating any prejudgment, it was certainly permissible for the Adjustment Board to determine physical fitness and utilize medical experts making up the equivalent of a medical arbitration decision. But we do not think that, in the absence of contract provisions establishing such a scheme, the Railway Labor Act has allowed the Adjustment Board by the provisions of an award to commit the ultimate decision of the case to such an outside agency. Congress has committed much to such Boards. Sometimes their decisions are final in an absolute sense, both legal and actual. In others they are final and binding except where there is a money award. And in any case their minimum significance is to serve as prima facie proof to render unnecessary any proof whatsoever in court where the matter is not controverted.[6] With such awesome powers, we do not believe that Congress has intended to

---

6. The dissenting opinions in the recent Day and Price cases, supra, 360 U.S. 548, 554, 79 S.Ct. 1322, 3 L.Ed.2d 1422 and 360 U.S. 601, 617, 79 S.Ct. 1351, 3 L.Ed. 2d 1460, in pointing up the questions of constitutionality of the Act, emphasizes what is they describe as the one-sided nature of judicial review: the employee loses, he has no right of review whatsoever; the employee wins, the carrier loses, the carrier has unlimited review on facts and law. See also, cited therein, Barnett v. Pennsylvania Reading Seashore Lines, 3 Cir., 1957, 245 F.2d 579; and Brotherhood of Ry. & Steamship Clerks v. Railway Express Agency, 6 Cir., 1956, 238 F.2d 181.

commit to the Adjustment Board the power to delegate ultimate judgment on controlling issues to some outside, non-contractual, agency.

Consequently, we think that while it was proper for the Adjustment Board to consider that determination by it of the question of physical fitness would be materially aided by use of the medical arbitration panel, the Board nevertheless had the duty to retain final jurisdiction to evaluate and determine the legal significance of any such medical reports. Under the practices followed in Adjustment Board proceedings where facts are brought forward frequently by informal statements, affidavits, and without sworn testimony subject to cross examination, it is certainly reasonable to resort to this medical panel. It assures that the Adjustment Board will have considered medical expert views based on recent examinations at a time and place convenient to all. It is perhaps a sort of crude adaptation long in advance of contemporary experiments in court use of the so-called independent impartial medical expert appointed by the court.

But with all of this utility, in the very nature of things, the medical panel cannot, and should not, determine the legal issue. In the first place, the conclusion to be expressed by the medical arbiters is a mixture of legal and medical concepts. Equally likely, there is so much uncertainty in each of the concepts, that the ultimate conclusion—even by the majority after calling in the medical umpire—will itself be subject to interpretation. Indeed, this was the problem presented in Smith v. Louisville & Nashville R. R., supra, where the District Court held that it was the function of the Adjustment Board to evaluate the equivocal report of the neutral doctor. Such a procedure also assures that when and as the medical arbitration report is evaluated and applied by the Adjustment Board, the enforcing court can then determine the validity of the award based in part on such report. Thus, this determination may include questions whether the underlying collective bargaining agreement ei-

ther restricts the carrier in the discharge of employees for suspected physical unfitness or the means by which management decision is to be determined or tested. After many years of juridical travail, that was the end result in Gunther v. San Diego & Arizona Eastern Ry., supra, in the final decision. D.C., 198 F.Supp. 402.

■ Since the award was incomplete to this extent, the question is left as to the action which the District Court should take. The Court dismissed the case without prejudice to further hearings before the Adjustment Board. But we think that this was unduly rigid. It multiplies and complicates litigation in a day when, with overburdened courts facing ever increasing burdens, a prime concern should be in simplifying it. It is after all but one controversy. It is not one grievance today and another one months or years later when the supplemental award is brought before the court in an entirely newly filed action. To refile the case will itself present substantial obstacles. We know first hand what, in many districts, is the time lag from date of filing until date of trial. There is no real reason why in a proceeding aimed at informality and dispatch, the parties should wait months or years for the re-filed case to percolate again to the top of the calendar call. Furthermore, Congress has shown an especial regard for the difference in economic strength of the two protagonists. Court costs are to be borne by the United States and attorney's fees are allowed if the Employee "shall finally prevail." See note 5, supra. As each of the administrative and court proceedings is an essential step toward an award in form which authorizes judicial enforcement, such costs and attorney fees ought not to be imperiled by chopping up a single controversy into two or three separate lawsuits.

Even more important, dismissing the first suit with leave to refile a new one inescapably runs into questions of res judicata, collateral estoppel or the like. Indeed, this added fuel to the fire and time to an almost endless proceeding in the Gunther case, supra. See 192 F.

Supp. 882. See also F.R.Civ.P. rule 41 as to dismissals.

On the other hand, the protection of every party, every interest, and every contention, whether legal and factual, is assured by the court retaining the case in its incompleted state upon its docket pending the filing of a supplemental award by the Adjustment Board. And where this makes sense in the usual case, it is all the more essential where, on our holding, the District Court is here required to retain the case at least to the extent of enforcing compliance with the medical examinations and reports. The language of § 153 First (p) is broad and flexible enough for a District Court to mold equally flexible and sensible procedures. District Courts frequently resort to such measures in administrative agency matters. Walker v. United States, W.D.Texas, 1961, 204 F.Supp. 918; 1962, 208 F.Supp. 388. And so may a Court of Appeals. Aetna Ins. Co. v. Paddock, 5 Cir., 1962, 301 F.2d 807; Cross v. Pasley, 8 Cir., 1959, 267 F.2d 824.

The result is that the case must be reversed and remanded for further and consistent proceedings.

Reversed and remanded.