Reasonover & Weinberg, of Dallas, Tex., and C. M. Mulholland, of Toledo, Ohio, for plaintiff.

Strasburger, Price, Holland, Kelton & Miller and Mark Martin, all of Dallas, Tex., for Henry Watson.

Touchstone, Wight, Gormley & Touchstone, of Dallas, Tex., for M K & T Co. of Texas.

ATWELL, District Judge.

The Act of June 21st, 1934, at Section 153, Title 45, U.S.C.A., page 233, provides for a National Railroad Adjustment Board. This Board is one of the agencies created by the Act to avoid any interruption to commerce, or, to the operation of any carrier engaged therein, and to provide for the prompt and orderly settlement of all disputes concerning the rates of pay, rules, or, working conditions, etc.

The above plaintiff applied to that Board in 1940 for the settlement of a dispute between it and the M K & T Ry. Co. of Texas, growing out of facts hereinafter

**SYSTEM FEDERATION NO. 8 OF RAILWAY EMPLOYERS' DEPARTMENT OF AMERICAN FEDERATION OF LABOR et al. v. MISSOURI-KANSAS-TEXAS R. CO. OF TEXAS et al.**

No. 494.

District Court, N. D. Texas, Dallas Division.

June 20, 1941.

detailed, concerning the work and employment of John Henry Watson.

The Board made an order and provided that the carrier should comply with it by August 21st, 1940. Shortly thereafter it developed that Watson did not have notice of the hearing and was not present. Thereupon, the Board set aside the award and ordered a new hearing, and gave Watson proper notice.

This new hearing came on in the latter part of November, 1940, and affirmed its earlier action, but the order neglected to fix a time limit within which the carrier should comply with the order.

The statute itself, makes the fixing of a time limit in the order, an essential part of that order.

This is a proceeding to require the carrier to comply with the order. Subsections o and p of section 153. As the record now stands, there is no time limit fixed within which the carrier shall comply, and the prayer to this court cannot be granted.

The limit fixed in the first order is wholly useless to us, since that limit had passed before the granting of the new hearing, and, of course, was in the past at the time of the entering of the second judgment.

The statute provides that the United States District Court may make an order, by writ of mandamus, or otherwise, as may be appropriate, to enforce, or, set aside the order of the Board.

The facts developed at this hearing are as follows:

The contract under which Mr. Watson and his co-laborers worked for their employer, at the beginning of their services, did not, in its direct wording, divide the mechanics into "top mechanics" and "step-mechanics". It divided them into "mechanics" and "mechanics helpers." But the parties working under that contract did post seniority notices, so that "top mechanics" and "step mechanics" were listed on them, and, in fact, there did exist such classes.

On these seniority lists there also appeared "mechanics helpers". So it seems manifest that the contract as acted upon by the parties, both employers and employees, contemplated, and the parties so recognized, different sorts of mechanics, to-wit, the two which were shown on the seniority lists posted under the working agreement, and as I have already stated "mechanics helpers."

I think, too, that the testimony indicates that while Mr. Watson's labors begun as a "top mechanic" on June 15, 1923, that he lost that position shortly thereafter, and received a much lesser pay, to-wit, as low as 58 cents. That another employee in the same category with a slightly greater seniority, was also reduced, but not to the extent that Mr. Watson was reduced. Mr. Case was reduced to sixty-eight cents, and Mr. Watson to fifty-eight cents. Both of those, however, were less than "top mechanics". Certainly Mr. Watson vacillated along in that pay scale until finally he was restored to the "top mechanics" scale in 1936, on the seniority list and pay.

It seems that the seniority of Case was dated back to the time of the beginning of his employment which was in 1922. He was on the "top mechanics" seniority list.

So there does appear to be a difference in the treatment of Watson and Case, but there is a difference during that time of pay between Watson and Case. Not a difference sufficient to keep Case in the "top" notch, but a difference between Watson and Case in the pay in the "step" notch.

The difference in pay might justify, and in truth the testimony warrants the court in indicating that it did justify, men who did not have service seniority over either Watson or Case, being placed above them. That is, Junior men, as we call it, not junior in actual years, but junior in service years.

That does not necessarily indicate, as I gather from the testimony, anything more, than, that, these junior men might have been superior mechanics, or, Watson might not have cared to take a job in the higher bracket than that in which he was then working. That being optional with the worker. He did not have to go up if he didn't wish. He could remain on the pay level that he then was, if he saw fit.

Now, I am not advised as to what effect, if any, that would have upon an employee's desire, or, determination to be listed differently from that which he enjoyed. Certain it is that after the passing of thirteen years, Watson was placed back on the upper seniority which he had first enjoyed. He does not appear to have objected to the valley in which he was during those thirteen years. When he was replaced on the "top" list, if I may say it that way, the other side objected, the other employees objected because he displaced some of

them, and that objection finally reached the Adjustment Board. The carrier thinking that his controversy was about the same as the Case controversy, ruled Watson's case as it had ruled Case's case. There is, as I see it, substantially those little differences that I have indicated between the two men's cases.

After Watson was acted upon again, he let it rest for twenty-three months, and then he sought to assert his rights as he understood them, and the carrier restored his June 1923 seniority, as it had Case's 1922 seniority, and the controversy went to the Adjustment Board.

The proceeding, being purely statutory, must comply with the provisions. The court has no authority to reach up into the calendar and choose some optional date at which a compliance shall be had, because the Act says the order of the Board shall fix that limit, and that is a part of the judgment that the court scrutinizes.

It happens that the state court pending this skirmish before the Board, granted an injunction, denying the railroad the right to carry into execution the order of the Board, and that restraining order is still in force and effect. This court makes no observation with reference to its validity.

The cause must be dismissed without prejudice to subsequent assertion, if, and, when the statute is complied with.