**SWITCHMEN'S UNION OF NORTH AMERICA, Plaintiff and Defendant-By-Counterclaim,**

v.

**CLINCHFIELD RAILROAD COMPANY, Defendant and Plaintiff-By-Counterclaim.**

**Civ. A. No. 2290.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

May 7, 1969.

608

T. R. Bandy, Jr., Kingsport, Tenn., Russell M. Baker, Baker, Jordan & Foreman, Dallas, Tex., for plaintiff.

Ferdinand Powell, Jr., Johnson City, Tenn., Harry W. Lawrence, Asst. General Solicitor, Erwin, Tenn., for defendant.

## MEMORANDUM OPINION
## AND ORDER

Neese, District Judge.

This action was set for pretrial conference on February 17, 1969. On February 10, 1969, the defendant and plaintiff-by-counterclaim moved for a summary judgment, Rule 56(b), Federal Rules of Civil Procedure. At the pretrial conference, adjourned to April 3, 1969, the Court was uncertain of its jurisdiction and declined to proceed further with either the pretrial conference or the case as a whole until the jurisdictional question is determined.

The parties hereto mutually agreed on August 22, 1967 to the establishment of a special board of adjustment to resolve certain disputes otherwise referable to the National Railroad Adjustment Board and ceded jurisdiction to the special board of the docket which was attached to the agreement submitted to it under the agreement to establish such board, arising out of the interpretation of agreements then in effect between the parties. 45 U.S.C. § 153, second. The docket of claims attached to the agreement listed six members of the plaintiff and defendant-by-counterclaim (trade union), who were claiming pay on account of yardmen of the carrier's handling aprons at the piggyback track in Kingsport, Tennessee in alleged violation of the parties' agreement governing the regular duties of switchmen.

This special board of adjustment, known as public law board no. 92, made its award on March 1, 1968. The award sustained the claims. The statement of the claim preceding the findings therein was: "* * * Claim is being made for one day's pay at pro-rata rate, for Switchman H. Martin, January 13, 1967, and all other claimants and dates of record, account of Switchmen performing other than their regular duties, i.e., lifting and placing Steel Aprons (runways) on Piggyback Cars, on Piggyback Track, Kingsport, Tennessee." It is undisputed that the carrier paid the six switchmen listed on the aforementioned docket for all the days which were also listed thereupon prior to the commencement of this action.

The plaintiff and defendant-by-counterclaim urges that the aforementioned award directed the defendant and plaintiff-by-counterclaim "* * * to pay H. T. Martin one day's pay, i. e., $26.87, and said award covered all time claims of dates of record and all other claimants as of the date of the award and claimants for whom time claims had been filed were those employees for whose benefit this suit is brought. * * *" The plaintiff seeks to invoke the jurisdiction of this Court herein "* * * under and by virtue of Public Law 89–456; 45 U.S.C. 153, § 3*, as amended June 20, 1966."

Public Law 89–456, §§ 1, 2, 80 Stat. 208, 209, served to amend on June 20, 1966, 45 U.S.C. § 153, first, subsections (m) and (o)–(x), inclusive, and 45 U. S.C. § 153, second. Under these amendments, compliance with the awards of special adjustment boards are enforcible "* * * by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board. * * *" 45 U.S.C. § 153, second.

"* * * If a carrier does not *comply with* an order of a division of the Adjustment Board *within the time limit in such order*, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as

---

* This reference should have been to Railway Labor Act, § 3, as 45 U.S.C. § 153 has no § 3.

**610**

other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail, he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, *by writ of mandamus or otherwise,* as may be appropriate *to enforce or set aside the order* of the division of the Adjustment Board: *Provided, however,* That *such order may not be set aside except* for failure of the division to comply with the requirements of this chapter, *for failure of the order* to conform, or *confine itself, to matters within the scope of the division's jurisdiction,* or for fraud or corruption by a member of the division making the order." 45 U.S.C. § 153, first, (p). [Emphasis supplied.]

■ "* * * The major objective of the Railway Labor Act, 44 Stat. 577, as amended, 45 U.S.C. §§ 151–188 (1958 ed.), was 'the avoidance of industrial strife, by conference between the authorized representatives of employer and employee.' * * *" Brotherhood of Railway & Steamship Clerks, etc. v. Association for Benefit of Non-Contract Employees (1965), 380 U.S. 650, 658, 85 S.Ct. 1192, 1196, 14 L.Ed.2d 133, 139[1]. That objective may be effectuated only if the means chosen by the parties for settlement of their differences is given full play. *Cf.* United Steelworkers of America v. American Mfg. Co. (1960), 363 U.S. 564, 566, 80 S.Ct. 1343, 4 L.Ed.2d 1403, 1406 (headnote 1). "* * * Congress intended to go no further in its use of the pro-

cesses of adjudication and litigation than the express provisions of the Act indicate. * * *" Switchmen's Union of North America v. National Mediation Board (1943), 320 U.S. 297, 302, 64 S. Ct. 95, 98, 88 L.Ed. 61, 65 (headnote 5). The Railway Labor Act "* * * should be literally applied in the absence of a clear showing of a contrary or qualified intention of Congress. * * *" Brotherhood of R. T. v. Chicago, R. & I. R. Co. (1957), 353 U.S. 30, 35, 77 S.Ct. 635, 637, 1 L.Ed.2d 622, 626 (headnote 4).

■ It is clear and unambiguous that the Congress intended that carriers and its employees, through their unions or otherwise, should be encouraged to avoid industrial strife by setting up special boards of adjustment to determine disputed claims arising from the interpretation of collective bargaining agreements then in effect between the carrier and union; that such special boards' jurisdiction was to be limited to the jurisdiction conferred thereupon by agreement of the carrier and union; that compliance with the awards of these special boards should be enforced in United States district courts in the same manner and subject to the same proceedings for enforcement of compliance therewith as had earlier been provided for enforcement of compliance with awards of the National Railroad, Adjustment Board; and that the right of action to enforce such compliance should accrue on the date fixed by the special boards as "* * * the time limit * * *" for such compliance, 45 U.S.C. § 153, first, (p).

■ Apparently through an inadvertence, public law board no. 92 neglected to include in its order a time limit within which the carrier must have complied therewith. "* * * [T]he Act says the order of the Board shall fix that limit [when compliance shall be had], and that is a part of the judgment that the court scrutinizes. * * *" System Federation No. 8, etc. v. Missouri-K.-T. R. Co., D.C., Tex., (1941), 40 F.Supp. 803, 805[2]. Yet, "* * *

courts are invested with sufficient appellate jurisdiction over the Board to protect [members of the plaintiff-union and defendant-by-counterclaim] from a denial of due process." Ferro v. Railway Express Agency, Inc., C.A.2d (1961), 296 F.2d 847, 852–853. It is the opinion of this Court, and so found and concluded, that public law board no. 92 denied the plaintiff's claimant-members their constitutional right to due process of law by failing to fix in its award a compliance date and, consequently, an accrual time for their right to seek enforcement of the board's order in this action. *Cf.* Hornsby v. Dobard, C.A.5th (1961), 291 F.2d 483, 487[3]; Barnett v. Pennsylvania-Reading Seashore Lines, C.A.3rd (1957), 245 F.2d 579, 581[1, 2].

■ Since the award is incomplete to this extent, the question follows as to whether this Court should consider its jurisdiction invoked sufficiently by the compliance with the award of the board by the carrier's paying the amounts evidently due the persons listed for the days listed on the aforementioned docket, and thereby, perhaps rendering the failure of inclusion of a compliance date in the award moot; or whether to set aside the board's award for failure of the board to comply with 45 U.S.C. § 153, first, (p). The Court believes that under the circumstances it should assume jurisdiction.

■ To dismiss this proceeding now for want of jurisdiction without prejudice to further hearing before the board is considered unduly rigid. This would multiply and complicate litigation when most courts have more of it than can be adjudicated properly and when the prime concern should be simplification. The procedures under the Railway Labor Act are obviously designed for informality and dispatch. Court costs and attorney's fees in proceedings to enforce compliance with awards thereunder burden the minimal appropriations the Congress provides to operate the federal courts and ought to be minimized. A dismissal might create new problems of res adjudicata, collateral estoppel, etc.

"* * * The language of § 153, first, (p) is broad and flexible enough for a District Court to mold * * * flexible and sensible procedures. * * *" Hodges v. Atlantic Coast Line Railroad Company, C.A.5th (1962), 310 F.2d 438, 445[8].

■ Where the employer and its employees have chosen a special adjustment board as their instrument for the definitive settlement of claims under their collective bargaining agreement, and a dispute arises involving an interpretation of the award, it is not open to the courts to reweigh the merits of the claims. *Cf.* General Drivers, etc., Local Union No. 89 v. Riss & Co. (1963), 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918, 920 (headnote 3). There is a provision in the Railway Labor Act that, in case a dispute arises involving an interpretation of an award, the division of the National Railroad Adjustment Board upon request of either party shall interpret the award in the light of the dispute. 45 U.S.C. § 153, first, (m). Prior to the 1966 amendments, aforementioned, district courts could not remand cases to that Board. Transportation-Communication Employees Union v. Union Pacific R. Co. (1966), 385 U.S. 157, 166, 87 S.Ct. 369, 17 L.Ed.2d 264, 271, n. 4[7] rehearing denied (1967), 385 U.S. 1032, 87 S.Ct. 737, 17 L.Ed.2d 680.

The defendant and plaintiff-by-counterclaim maintains that it has fully complied with the award of public law board no. 92 by paying the proper amounts of money to the six claimants on all the claims it conceded jurisdiction to that board to adjudicate, and that no enforcement of further compliance is required by the award. The plaintiff and defendant-by-counterclaim maintains that the carrier has not fully complied with the board's award, and that it is entitled to enforcement of the award as to 20 more of its members and as to additional days for the six of its members who had been partially compensated. The purport of the award of the board is not only disputed by these

parties, it is hardly a paragon of clarity for the Court.

If this Court were empowered to remand this proceeding to public law board no. 92, that body could doubtless "* * * with its experience and common sense, handle this entire dispute in a satisfactory manner in a single proceeding. * * *" *Ibid.*, 385 U.S. at 165, 87 S.Ct. at 373, 17 L.Ed.2d at 270[6]. Unfortunately, the Congress did not include as a part of these same amendments an applicability of 45 U.S. C. § 153, first, (m) to 45 U.S.C. § 153, second, authorizing special adjustment boards. So, this Court has no apparent authority to remand this proceeding to public law board no. 92 for clarification.

The defendant and plaintiff-by-counterclaim has interposed a motion for a summary judgment with supporting affidavits. Rule 56(b), Federal Rules of Civil Procedure. The plaintiff and defendant-by-counterclaim has served opposing affidavits. Rule 56(c), Federal Rules of Civil Procedure. The judgment sought must be rendered forthwith if the pleadings, admissions on file, and affidavits show that there is no genuine issue as to any material fact, and that the defendant and plaintiff-by-counterclaim is entitled to a judgment as a matter of law. *Idem.*

This Court does not attempt to interpret the award of public law board no. 92. "* * * Its members understand railroad problems and speak the railroad jargon. * * *" Slocum v. Delaware, L. & W. R. Co. (1950), 339 U.S. 239, 243, 70 S.Ct. 577, 579, 94 L.Ed. 795, 800. The Court, for example, is confused by the carrier's paying six claimants, when only one is specifically named in the award. These are results railroad persons understand inherently and Courts do not. This Court is empowered, however, 45 U.S.C. § 153, second; *ibid.*, first, (p), to determine whether to set aside the special adjustment board's award for: (a) its failure to comply with the requirements of title 45, chapter, 8, U.S.C., (b) for failure of the award to conform, or confine itself, to matters within the scope of the jurisdiction ceded to it by the agreement of the parties, or (c) for fraud or corruption by a member of the board making the award.

As to (a) and (c), *supra,* the Court finds and concludes that there is no reason whatever to set aside the award. As to (b), *supra,* the Court finds and concludes that except that they failed to include in their award a certain date for compliance therewith, the board members complied with the essential terms of the agreement of these parties on which their jurisdiction was grounded, and having done so, any award to any claimants or for any days not included on the docket designated as attachment "A" to such agreement would have constituted a failure to conform or confine the award to matters within the scope of the jurisdiction ceded by such agreement, rendering public law board no. 92 a body *functus officio.* See Brotherhood of Railway and Steamship Clerks, etc. v. Norfolk Southern Ry. Co., C.A.4th (1944), 143 F.2d 1015, 1018 [7]; cf. United Steelworkers v. Enterprise Corp. (1960), 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424, 1428 [4].

Accordingly, the motion of the defendant and plaintiff-by-counterclaim for a summary judgment hereby is SUSTAINED. The remaining issues herein are rendered MOOT. Summary judgment will enter for the defendant and plaintiff-by-counterclaim Clinchfield Railroad Company, dismissing the complaint of the plaintiff and defendant-by-counterclaim Switchmen's Union of North America. Rule 58, Federal Rules of Civil Procedure.

Nothing hereinabove, however, shall be construed to defeat the plaintiff's right to allowance of a reasonable fee for its attorney, to be taxed and collected as a part of the costs of this suit, should the plaintiff finally prevail. Costs hereof shall be paid out of the appropriation for the expenses of the courts of the United States. 45 U.S.C. § 153, first, (p).