**UNITED TRANSPORTATION UNION,**
**an unincorporated Association, et al.**

v.

**PATAPSCO & BACK RIVERS RAIL-**
**ROAD COMPANY, a body**
**corporate.**

**Civ. No. 70–202–K.**

United States District Court,
D. Maryland.

June 2, 1971.

Norris W. Tingle, and Savage, Jones, Tingle & Schwartzman, Baltimore, Md., for plaintiffs.

James P. Garland, and Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, District Judge.

This is an action brought to enforce two Awards of a Special Board of Adjustment constituted by the plaintiff Union and the defendant pursuant to the Railway Labor Act, 45 U.S.C. § 153 Second.[1] Plaintiffs are the United Transportation Union, an unincorporated association, and two of its members, Jerry M. Vandetti and R. E. Dovell. The two Awards herein involved were rendered in favor of those two individuals. The defendant is the Patapsco & Back Rivers Railroad Company (Patapsco), a Maryland corporation. The plaintiff Union and the defendant are parties to a collective bargaining agreement dated August 1, 1964, under which the Union is recognized, pursuant to a certification of the National Mediation Board, as the representative of the two individual plaintiffs herein and all other employees of Patapsco working as enginemen. Subject matter jurisdiction is present pursuant to 45 U.S.C. § 153.[1a]

The facts underlying the Awards have been stipulated and can be briefly stated as follows. In December of 1968, Patapsco notified plaintiff Vandetti that it had determined that Vandetti, because of certain acts and omissions unnecessary herein to relate, had forfeited all seniority rights under the labor agreement. Vandetti and the Union disputed that determination. In March of 1969, plaintiff Dovell was dismissed after a determination that the negligent performance of certain of his duties had resulted in a collision between two engines. Dovell and the Union contested Dovell's dismissal as an excessive act of discipline. On May 28, 1969, the Union and Patapsco agreed to establish a Special Board of Adjustment pursuant to 45 U.S.C. § 153 Second to resolve those two disputes. In the agreement creating the Board, the claims were stated as follows:

Case #1. Jerry Vendetti [sic]—Forfeiture of Seniority Case.

Statement of Claim dated December 30, 1968: "The Brotherhood of Locomotive Firemen and Enginemen [United Transportation Union] respectfully submits that Jerry M. Vendetti #1128 be reinstated without the loss of pay, seniority or any other rights and privileges afforded him under our present working agreement."

Case #2. R. E. Dovell—Discharge Case.

Statement of Claim dated March 11, 1969: "The United Transportation Union, Local E, 938, respectfully submits that the Company reinstate this employee without loss of pay, rights or any other privileges afforded him under our present working agreement."

---

1. The first paragraph of that section provides:

Second. Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section. In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with such arrangement, it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board.

1a. See n. 2, *infra.*

On September 10, 1969, the Board, after hearings, made findings in the two cases and rendered Awards sustaining the claims. In Vandetti's case, the Award was in the following language: "Claim sustained." In Dovell's case, the Board found that dismissal under the circumstances of the case was too severe, that a 45-day suspension, seniority unimpaired, was an appropriate measure of discipline and rendered the following Award: "Claim disposed of in accordance with the above Findings." Patapsco thereafter reinstated the two employees with seniority unimpaired.

The sole issue in this case is whether the Awards require the payment of compensation for time lost without deduction for earnings by the two plaintiffs from other sources during the periods following their respective wrongful deprivations of rights under the labor agreement. The applicable provision of the labor agreement, Rule 35(f), reads as follows:

(f) An Employee found to have been improperly discharged or to have been otherwise improperly disciplined shall be restored to his full seniority rights and shall be paid at his regular rate for all the time lost by him as a result of such improper discharge or other discipline.

The Union contends that the language of Rule 35(f) and of the two Awards rendered thereunder requires payments without any deductions for earnings from other sources. Patapsco contends, *inter alia,* that company-union practice, as evidenced by the manner of payment of a prior award of a prior Board, has been established in favor of interpreting Rule 35(f) and the Awards herein sought to be enforced as requiring such deductions. Alternatively, Patapsco urges that the Awards, as written, must be set aside for failure to set a date for compliance by the company as required by the statute, or that the Awards are so ambiguous as to be unenforceable.

■ The scope of judicial review, under 45 U.S.C. § 153 First (p) and (q), of an award of the National Railroad Adjustment Board is extremely narrow.[2]

2. Section 153 First, subsections (p) and (q) read as follows:

(p) If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however, That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.*

(q) If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for

45 U.S.C. § 153 Second provides, *inter alia*, that the awards of any special board of adjustment created pursuant to that section—

> shall be final and binding upon both parties to the dispute and if in favor of the petitioner, *shall direct the other party to comply therewith on or before the day named.* Compliance with such awards shall be enforcible by proceedings in the United States district courts *in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board.* [Emphasis supplied.]

Accordingly, the scope of review by this Court of the Awards of the Special Board, in issue in this case, is also extremely narrow. Absent any of the specific defects named in the statute (see the emphasized words in n. 2, *supra*), the Awards should be enforced in accordance with 45 U.S.C. § 153 Second unless the Court determines, in the exercise of its sound discretion, "that the award is too indefinite to be enforced, [in which event] it may remand the proceedings to the Board" under 45 U.S.C. § 153 First (q). *See* Hanson v. Chesapeake and Ohio Railway Company, 412 F.2d 631, 634–635 (4th Cir. 1969).

In *Hanson,* Judge Butzner wrote (at 634) in a proceeding to enforce an award of the Railroad Adjustment Board pursuant to 45 U.S.C. § 153 First (p):

> \* \* \* If, however, the district court, after considering the merits of

the action, decides that the award is too indefinite to be enforced, it may remand the proceedings to the board. Remand may be on the court's own initiative or on motion of either party. 45 U.S.C. § 153, First, (q). Transportation-Communication Employees Union v. Union Pac. R. R., 385 U.S. 157, 165, n. 4, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966); Brotherhood of Railroad Signalmen v. Southern Ry., 380 F.2d 59 (4th Cir.), cert. denied, 389 U.S. 958, 88 S.Ct. 324, 19 L.Ed.2d 368 (1967). [Footnote omitted.]

In Transportation-Communication Employees Union v. Union Pacific R. Co., 385 U.S. 157, 165 n. 4, 87 S.Ct. 369, 373, 17 L.Ed.2d 264 (1966), Mr. Justice Black, in the course of remanding an enforcement proceeding, brought under 45 U.S.C. § 153 First (p), to the District Court with directions further to remand it to the Railroad Adjustment Board, stated:

> \* \* \* At the time, the Court of Appeals had no alternative but to affirm the dismissal by the District Court, for district courts could only "enforce or set aside" the Board's orders under § 3 First (p). They could not remand cases to the Board. This was changed on June 20, 1966, by Pub.L.No. 89–456, § 2(e), 80 Stat. 209, which inserted a new provision, § 3 First (q), empowering district courts to remand proceedings to the Board. In view of the Board's failure to consider all of the issues and the clerks' understandable refusal to participate because of the then existing doubt as to whether they could be

review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. *On such review, the findings and order of the division shall be conclusive on the parties, except that*

*the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.* The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of Title 28. [Emphasis supplied.]

bound by the Board's decision, we conclude it appropriate to use this new availability of remand to the Board. A remand to the Railroad Adjustment Board of an enforcement action under 45 U.S.C. § 153 First (p) was also ordered by Judge Sobeloff in Brotherhood of Railroad Signalmen v. Southern Ry., 380 F.2d 59 (4th Cir.), cert. denied, 389 U.S. 958, 88 S.Ct. 324, 19 L.Ed.2d 368 (1967).

In Transportation-Communication Employees Union v. St. Louis-San Francisco R. Co., 296 F.Supp. 507 (E.D.Mo. 1968), appeal dismissed, Transportation-Communication Division-Brotherhood of Ry. Airline and S. S. Clerks, Freight Handlers, Exp. and Station Emp. v. St. Louis-San Francisco Ry. Co., 419 F.2d 933 (8th Cir. 1970), cert. denied, 400 U.S. 818, 91 S.Ct. 34, 27 L. Ed.2d 45 (1970), Judge Meredith noted (296 F.Supp. at 508–509):

Research has failed to reveal a case in which an award of a board created under the provisions of 45 U.S.C. § 153, Second, has been enforced or reviewed by the courts. The extent of this Court's jurisdiction under the statute to review the decisions of such boards must be determined. Title 45, U.S.C. § 153, Second, on its face, seems to limit the jurisdiction of the United States district courts to enforcement of the awards of the boards. That section of the statute refers only to enforcement, it does not talk of the setting aside of an award as does 45 U.S.C. § 153, First, (p) and (q). If the United States district courts have jurisdiction to do anything other than enforce such orders, it must arise by incorporation of all the provisions of 45 U.S.C. § 153, First, (p) and (q), into 45 U.S.C. § 153, Second, by the phrase "in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board."

The Railway Labor Act, 45 U.S.C. § 151 et seq., was amended in 1966.

Among the provisions amended are those under consideration, 45 U.S.C. § 153, First, (p) and (q), and 45 U.S.C. § 153, Second. The legislative history of the 1966 amendments indicates conclusively that Congress intended for the United States district courts to have jurisdiction to review the awards of the boards created by agreement of the parties under 45 U.S.C. § 153, Second, to the same extent that the district courts were granted jurisdiction to review orders of the Adjustment Board under 45 U.S.C. § 153, First, (p) and (q). See S.Rep.No.1201, 89th Cong., 2d Sess., June 2, 1966, 2 U.S.Cong. & Admin.News (1966), p. 2285 at 2289. See also Dominquez v. National Airlines, Inc., 279 F.Supp. 392 (S.D.N.Y.1968) (dictum).

See also a similar reading of the 1966 legislative changes by Chief Judge Northrop of this Court in Baltimore and Annapolis R. Co. v. National Mediation Board, 321 F.Supp. 51 (D.Md.1970). A contrary conclusion was seemingly reached by Judge Neese in Switchmen's Union of No. Am. v. Clinchfield R. Co., 310 F.Supp. 606, 612 (E.D.Tenn.1969). In this case, counsel for the defendant Railroad, in a memorandum submitted to this Court (Document 6, pp. 26–27, in the court file), after referring to Judge Neese's opinion and after discussing in some detail the Supreme Court's holding in Transportation-Communication Employees Union v. Union Pacific R. Co., *supra*, candidly concluded:

* * * It seems to follow naturally that if the awards of a Public Law Board are enforceable "in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board" (45 U.S.C. Section 153, Second), and if a proceeding to enforce such Adjustment Board awards is brought in the district courts by jurisdiction extended to those courts by Section 153, First (p), and if in such proceeding the district court may remand to the Adjustment Board regardless of the nonex-

istence of any pleading involving the "review" as opposed to the "enforcement" jurisdiction of the court, then the power to remand is to be read into Section 153, First (p), and is a probable remedy available to a district court asked to enforce an award rendered by a Public Law Board.

During oral argument in this Court in this case, counsel for both sides, while urging this Court to reach the merits of the controversy and to decide the issue of deductibility in its favor, stated that this Court has the power to remand. This Court agrees that it has the power to remand. The question remains, however, as to whether the exercise of that power is advisable in this case.

█ It must be noted, as emphasized *supra*, at page 611 herein, that 45 U.S.C. § 153 Second requires that if an award shall be "in favor of the petitioner, [the award] shall direct the other party to comply therewith on or before the day named." The Awards involved herein fail to set a date for compliance and therefore perhaps do not literally "comply with the requirements of this chapter" (45 U.S.C. § 153 First (p) and (q)). There are several cases holding such a technical defect to be fatal in an enforcement action. *See, e.g.*, Railroad Yardmasters v. Indiana Harbor Belt R. Co., 166 F.2d 326 (7th Cir. 1948); System Federation No. 8, etc. v. Missouri-K.-T. R. Co., 40 F.Supp. 803 (N.D.Tex. 1941). For a contrary holding, see Switchmen's Union of No. Am. v. Clinchfield Railroad Co., 310 F.Supp. at 610–611, *supra*. In this case, Patapsco has already complied with that portion of the Awards requiring reinstatement and has made a tender of lost time pay in accordance with its version of the Awards. Under those circumstances, the technical defect would seem to be so lacking in materiality as to be of no legal consequence. This Court does not, however, reach that question in view of its conclusion that a remand for further proceedings by the Special Board is required for the other reasons stated *infra*

in this opinion. On remand, the Board should comply strictly with the statutory requirement to name the payment dates, thereby avoiding the technical problems discussed *supra*.

The parties have stipulated, *inter alia*, the following facts:

\* \* \* \* \* \*

2. The Plaintiff is a labor Union representing employees in railroad industry, and was formerly known as Brotherhood of Locomotive Firemen and Enginemen. The Defendant is a railroad company operating on the premises of the Bethlehem Steel Company plant at Sparrows Point, Maryland and is a wholly owned subsidiary of that company. The Plaintiff and the Defendant are parties to a collective bargaining agreement dated August 1, 1964 in which the employer parties, identified as "the Company," are the Defendant; Philadelphia Bethlehem and New England Railroad Company; South Buffalo Railway Company and Steelton and Highspire Railroad Company. The Union parties, identified as "the Brotherhood" are the Plaintiff and Brotherhood of Railroad Trainmen. \* \* \*

\* \* \* \* \* \*

6. At the executive session at which the [two] awards were signed by Dr. Seidenberg [the neutral member of the Board] and the other members of [the] \* \* \* Board \* \* \*, the representative of the Defendant Company raised the question of deduction of outside earnings from the lost time claimed; whereupon the Union representative objected to the deduction of outside earnings, contending the awards and the working agreement which the Board interpreted did not provide for such deduction. The Company representative stated their position that the deduction of outside earnings had been established as a practice on the property in the application of a prior award of a prior Board. The Union representative stated their position that there was no prior practice. The matter was left unresolved.

7. During the course of negotiations on the property with regard to the two cases involved there was no discussion by either party with regard to deduction of outside earnings. Neither of the Briefs submitted to [the] * * * Board * * * raised any question of deduction of outside earnings nor was the point raised by Company representatives prior to the executive session, at which time the awards were signed by Dr. Seidenberg.

\* \* \* \* \* \*

9. On March 23, 1966 a previous Special Board of Adjustment, Special Board of Adjustment No. 719, had allowed a claim by the Brotherhood of Locomotive Firemen and Enginemen (now United Transportation Union) against Patapsco & Back Rivers Railroad Company on the same property. The award by Mortimer Stone, Referee and sole Board member, was simply "claim sustained." * * *

10. On March 31, 1967 T. H. Semmel, Acting Superintendent Patapsco & Back Rivers Railroad Company, sent a letter to the aggrieved employee, Mr. Kenneth C. Williams, concerning the aforesaid award of Special Board of Adjustment No. 719, in which letter he computed the net amount due to Williams as back pay after deduction of a total of $2,704.95 in outside wages earned during the period between Williams' dismissal from service and his reinstatement. A check for the net amount was enclosed with the letter. The letter was signed, under the legend "confirmed", by Mr. Kenneth C. Williams and was additionally signed, under the legend "approved", by James L. Shepherd, General Chairman, Brotherhood of Locomotive Firemen and Enginemen. * * *

3. Though the "employee parties" and the "Union parties," referred to in paragraph (2) of the Agreed Statement of Facts, quoted *supra*, concurrently negotiated the unitary collective bargaining agreement, Rule 35(f) of which is involved in this suit, that unitary agreement provides in its introductory clause:

11. On August 21, 1967 an interpretative award was issued by Jacob Seidenberg, as Chairman and neutral member of Public Law Board No. 11, in regard to Award No. 2 of that Board which involved a dispute between Brotherhood of Railroad Trainmen and South Buffalo Railway Company. South Buffalo Railway Company has been previously identified as one of the Company parties to the collective bargaining agreement between the Companies and the Brotherhoods, and is also a wholly owned subsidiary of Bethlehem Steel Company.[3]

The interpretation by Dr. Seidenberg, was in response to the issue of whether or not outside earnings should have been deducted in the calculation of back pay which was awarded to the claimant therein. The question for interpretation was stated by Dr. Seidenberg as follows:

"Are the claimant's earnings obtained during the period of November 21, 1966 and February 20, 1967 deductible from the amount of wages he would have earned as an employee of the carrier during that period in determining the damages due him under award No. 2?"

The conclusion stated by Dr. Seidenberg in answer to this question was:

"The neutral member is convinced that in view of the unsettled state of this subject, it would be in the best interests of the parties to follow the holding laid down on this subject by Special Board of Adjustment No. 719 which interpreted the same rule [Rule 35(f)] on this closely related property for another operating craft. The neutral member believes that the same rule should be given consistent interpretation to the fullest extent possible.

Each of the * * * Companies, individually and not jointly, and only with respect to its own employees, and each of the * * * Brotherhoods, individually and not jointly, and each only with respect to such employees who are represented by the particular Brotherhood, hereby agree as follows:

\* \* \* \* \*

In the words of Lord Coke 'the known certainty of the law is the safety of all'.

Accordingly, the Interpretation or Answer to the question framed by the carrier in its letter dated February 23, 1967 [the question quoted above] must be answered in the affirmative."

\* \* \* \* \* \*

The parties have filed as Joint Exhibit No. 7 herein the complete text of Dr. Seidenberg's interpretation rendered in connection with Award No. 2 of Public Law Board No. 11, which is referred to and partially quoted from in paragraph 11 of the Agreed Statement of Facts set out above. In that interpretation, Dr. Seidenberg further discussed the Award of Special Board No. 719 [4] as follows:

\* \* \* [T]he identical Rule 35(f) was construed by the Special Board [No. 719] and it held that in determining the total amount of back pay due the Claimant, the Carrier should deduct all outside earnings earned by the Claimant during the period he was not working for the Carrier.

When the Chairman of this Board reviews the entire record and the relevant authorities, he observed that the generally prevailing rule on this issue on the First Division—National Railroad Adjustment Board—is to hold that there may not be any deduction for outside earnings for employees whom the First Division had found to have been discharged or suspended without just cause. *Although this general rule is sometimes affected by the particular language of the rule being interpreted.* However, the First Division Rule is not universally followed by many special boards of adjustment involving the same operating crafts represented on the First Division. Moreover, the other three Divisions of the National Railroad Adjustment Board do not follow the First

Division on this issue. The Courts and the National Labor Relations Board generally pursue the common law rule of damages which is to hold that the aggrieved party is to be made whole but is not entitled to any undue enrichment. In short the Chairman's research on this subject shows it to be somewhat less than pristine clear. [Emphasis supplied.]

Counsel for the Union and the two individual plaintiffs, in a letter to this Court dated February 2, 1971, has written with reference to those comments by Dr. Seidenberg:

This statement by Dr. Seidenberg is obviously in error, since Special Board of Adjustment No. 719 did not so construe Rule 35(f). Nothing in that Award, which is attached to the Agreed Statement of Facts as Exhibit No. 5, relates to deduction of outside earnings. It is true that there was a compromise settlement of that Award which is set forth in Exhibit No. 6 comprising a letter from the Railroad Company to the Claimant and confirmed by him and his general chairman. This is not a holding of Special Board No. 719 at all, but merely a compromise of that Award and did not set any precedent.

The fact that we agreed in the Statement of Facts [5] that such Awards did exist, does not mean we acquiesce in Respondent's contention that it was the past practice on the property to deduct outside earnings.

It is further our contention, as we have previously stated, that Dr. Seidenberg, the neutral member and Chairman of Public Law Board No. 397, was an experienced expert in the field of Railroad labor and at the time of the Awards was cognizant of the Interpretation he made in 1967. We contend that the Court need not go beyond the wording of the Awards in

4. The Award of Special Board No. 719 is referred to in paragraph 9 of the Agreed Statement of Facts. See p. 614, *supra.*

5. That is, in the factual stipulation in this case.

order to determine their meaning, since Dr. Seidenberg was the expert who has already served that function. We strongly feel that the Court should enforce the Awards as stated, by applying the measure of damages set forth in Rule 35(f) of the Agreement * * *.

Plaintiffs seek to buttress their contentions herein by reliance upon Sweeney v. Florida East Coast Railway Company, 389 F.2d 113 (5th Cir. 1968), involving an award by the National Railway Adjustment Board, First Division. In *Sweeney*, in which the award provided for compensation "for time lost" (at 113) and did not refer in any way to the question of whether other earnings should be taken into account, Judge Tuttle concluded (at 116):

> With reference to the several sample orders of the Railway Labor Board which sometimes provide for "all time lost," without more, and which sometimes provide for the allowance of a claim with the added proviso "earnings and other employment or unemployment compensation received during the same period will be deducted" or some such similar language, it is plain that in a substantial number of cases the Board has adopted the latter method of compensating an employee for whom it granted an award. However, there seems to be no real doubt but that when the Railway Adjustment Board undertook to do this, it used language that made it clear beyond doubt that there was to be deducted from the amount of time lost compensation earned by the employee from other sources. Moreover, it appears in some of the awards that dissents were filed by either the employee member or the carrier member that highlighted this precise point, thus indicating that the Board knew exactly how to word an award when it wished to give a monetary award for all time lost without deductions. We conclude that the language used here required that the trial court find

Sweeney was entitled to the total amount of his "time lost," without deductions except for the circumstances that are stated below.

In his opinion in an earlier case, Dr. Seidenberg, the neutral member of the Board in this case, has written that the determination of the deductibility issue "is sometimes affected by the particular language of the rule being interpreted." See Dr. Seidenberg's remarks quoted *supra* at p. 615. Dr. Seidenberg's views and past opinions do not provide the clear guidelines Judge Tuttle found to exist in *Sweeney*. Additionally, neither clear guidelines nor, for that matter, any clues are provided by the language of the Awards in this case or by Rule 35(a) of the applicable labor agreement, as to whether that agreement calls for outside earnings to be deducted, prohibits such deductions, or leaves the matter to the discretion of the Board in each particular case. The resolution of that question is not a matter of the "mere construction of a 'document' in terms of the ordinary meaning of words and their position." Order of Railway Conductors v. Pitney, 326 U.S. 561, at 566–567, 66 S.Ct. 322 at 325, 90 L.Ed. 318 (1946). *See also* Gunther v. San Diego & Arizona E. R. Co., 382 U.S. 257, 260–262, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). As Mr. Justice Black wrote in Transportation-Communication Employees Union v. Union Pacific R. Co., 385 U.S. at 160–161, 87 S.Ct. at 371, *supra*:

> * * * A collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts, which control such private contracts. * * * "* * * [I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. * * * The collective agreement covers the whole employment relationship. It calls into being a new common law —the common law of a particular industry or of a particular plant." Unit-

 

ed Steelworkers of America v. Warrier & Gulf Nav. Co., 363 U.S. 574, 578–579, 80 S.Ct. 1347, 1351, 4 L.Ed. 2d 1409. In order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements. * * * [Citations omitted.]

Under the circumstances of this case, this Court concludes that a remand is highly desirable so that the Special Board can, after it hears from all of the parties hereto, clarify its interpretation of the underlying agreement as to deductibility, *vel non*, of outside earnings, and apply that interpretation in connection with the two Awards at issue in the within case. In remanding, this Court expresses no opinion as to whether there is or is not, either in general in the railroad industry, or in connection with the agreement here involved, any custom or usage with regard to deductibility of outside earnings. Nor does this Court express any opinion concerning how the agreement in issue in this case should be interpreted or applied. It is for the Special Board—not for this Court—to make those determinations, subject only to the narrow review function to be performed by this Court.[6] It is sufficient to note herein at this time that the words "shall be paid at his regular rate for all the time lost by him" in Rule 35(f), have not, in all instances, been construed by those responsible for interpreting the same or substantially the same language to require payments for lost time without deduction for outside earnings.

For the reasons set forth in this opinion, the two Awards are hereby remanded to the Special Board for the determination of the single question presented. It is so ordered.

6. In that connection, this Court notes that during the proceedings before the Special Board, the sole question in connection with the two Awards here in issue was not presented to or considered by the Special Board until its Executive Session. See paragraphs 6 and 7 of the Agreed Statement of Facts, quoted *supra* at pages 613–614.